**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

EDI PRECAST, LLC,                    *

      Plaintiff,                    *

v.                                   *

                                        **Civil Case No.: PWG-12-122**

RAYMOND K. CARNAHAN, JR., *et al.*   *

      Defendants.                   *

                               *

*    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

This Memorandum Opinion disposes of Plaintiff EDI Precast, LLC's ("EDI") Partial Motion for Summary Judgment, ECF No. 52, and accompanying Memorandum, ECF No. 52-1; Defendants Raymond K. Carnahan, Jr. and Northern Virginia Erectors, LLC's ("NVE")[1] Opposition, ECF No. 58; Plaintiff's Supplement ("Pl.'s Supp."), ECF No. 61; and Defendants' Response to Plaintiff's Supplement ("Defs.' Supp. Resp."), ECF No. 63.

I also have received Defendants' Request for a Hearing, ECF No. 53. Having reviewed the filings, I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the reasons stated herein, Plaintiff's Motion is GRANTED in part and DENIED in part.

---

[1] The Second Amended Complaint, ECF No. 49-1, alleges, in addition to the counts for which Defendants seek summary judgment, a "Civil Conspiracy" count against Christine S. Carnahan. Second Am. Compl. 22. Summary judgment is not sought with respect to this count, and Ms. Carnahan has not joined in the opposition to the pending motion for summary judgment. Accordingly, "Defendants" as used herein will refer to Mr. Carnahan and NVE only unless otherwise stated.

## I. FACTUAL BACKGROUND

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the non-movant, drawing all justifiable inferences in that party's favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (U.S. 2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Unless otherwise stated, this background is composed of undisputed facts. Where a dispute exists, I consider the facts in the light most favorable to Defendants. *See Ricci*, 557 U.S. at 585–86; *George & Co.*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480.

Plaintiff is a "specialized labor service company in the business of installation and erection of structural and architectural precast stone and concrete in mostly commercial projects." Second Am. Compl. ¶ 12, ECF No. 49-1; *see* Raymond Carnahan, Jr. and N. Va. Erectors, LLC Answer to Second Am. Compl. for Declaratory and Inj. and Other Relief and for Damages ("Answer") ¶ 12 (admitting same), ECF No. 50.[2] EDI is a Maryland limited liability company formed in 2007 by Thomas E. Nicholson. Nicholson Dep. 19:16–20:11, Pl.'s Mem. Ex. 1, ECF No. 52-2; Entity Detail for EDI Precast LLC, Defs.' Opp'n Ex. 1, ECF No. 58-1. Before 2007, Nicholson operated an entity with a similar name, namely EDI, Inc., which also specialized in precast concrete work. Nicholson Dep. 15:10–20.

---

[2] In an apparent error, the document entered on the docket as Plaintiff's Second Amended Complaint is actually Plaintiff's first Amended Complaint, *see* ECF No. 49. However, that document attaches a redline of Plaintiff's Second Amended Complaint against the original Amended Complaint, and Defendants' answers appear to have responded to the allegations in the Second Amended Complaint. *See* Answer; Christine Carnahan's Answer to Second Am. Compl. for Declaratory and Inj. and Other Relief and for Damages, ECF No. 51. I therefore will give effect to the document that Plaintiff clearly intended—and Defendants clearly have acknowledged—as the proper Second Amended Complaint.

Defendant Carnahan worked for EDI, Inc. from the time of its formation in about 2001, and continued to work for EDI Precast, LLC until he was terminated in January 2012.[3] Carnahan Dep. 16:18–20, 18:4–11, Pl.'s Mem. Ex. 2, ECF No. 52-3. When Carnahan began working for EDI, he was a job-site foreman, but in around 2008 he was promoted to a position that has been described as "field superintendent," *id.* 20:4–17, or "job superintendent / senior project manager," Second Am. Compl. ¶ 16; *see* Answer ¶ 16 (admitting same). "At all times relevant to [this action], Mr. Carnahan . . . [held] a position of trust and leadership. He direct[ed] and overs[aw] EDI's operations on the job site, supervise[d] the employees, and [was] the direct liaison with the vendors and customers." Second Am. Compl. ¶ 16; *see* Answer ¶ 16 (admitting same). In 2007, Carnahan executed a Covenant not to Compete on which the counterparty was identified as "EDI, LLC, a Maryland corporation (the 'Employer')" and for which Nicholson signed as president. Covenant not to Compete (the "Noncompete Agreement"), Pl.'s Mem. Ex. 5, ECF No. 52-6.[4]

At some point in time, Carnahan began doing precast concrete jobs on the side, in addition to his work for EDI. Carnahan Dep. 44:17–20. In 2009, Carnahan created NVE, a Virginia limited liability company, through which he "d[id] some of this side work." Carnahan Dep. 91:8–16; *see* Certificate of Organization of N. Va. Erectors, LLC, Pl.'s Mem. Ex. 6, ECF No. 52-7. Plaintiff has provided a Table of Jobs ("Job List") that sets forth work done by Carnahan or NVE that was not done under the auspices, or with approval, of EDI. Job List, Pl.'s

---

[3] Carnahan also testified that, prior to working for EDI, Inc., he worked for twenty years for PEN Contracting, an entity owned by Nicholson's father. Carnahan Dep. 18:12–19:5. Thus, Carnahan's relationship with the Nicholson family has spanned over three decades.

[4] Carnahan disputes the legal effect of the Noncompete Agreement, but there is no dispute that such a document exists, that it was executed by Carnahan and Nicholson, or that it names as parties to the agreement "Raymond Carnahan (the 'Employee')" and "EDI, LLC, a Maryland Corporation (the 'Employer')." *See* Noncompete Agreement 1.

Mem. Ex. 5; Carnahan Dep. 48:2–12.[5]  According to the Job List, Defendants have performed twenty-two precast jobs for Arban Precast Stone Ltd. ("Arban") between 2007 and 2011, totaling $336,407 worth of work.  Job List.  Although Carnahan testified at his deposition that the Job List "contain[s] all of the precast or steelwork that [he] did either as an individual or through Northern Virginia Erectors . . . and not through EDI," Carnahan Dep. 48:6–12, it also is undisputed that Carnahan and/or NVE performed precast work at the National Zoo in December 2011, even though that work was not listed on the Job List.  *See* Second Am. Compl. ¶¶ 29, 31–32; Answer ¶¶ 29, 31–32 (admitting certain factual allegations contained therein).

Nicholson testified, and Defendants have not disputed, that prior to 2007, Arban was one of the top three or four manufacturers of precast stone that would employ EDI and Arban gave EDI somewhere between three and five jobs per year.  Nicholson Dep. 48:2–21.  Nicholson has asserted that Plaintiff was "doing a fair amount of work with [Arban], then it stopped," *id.* at 37:1–15, which Carnahan also is not able to confirm or dispute.  *See* Carnahan Dep. (Defs.' Excerpts) 53:3–8, Defs.' Opp'n Ex. 2, ECF No. 58-2.

---

[5] Determining the undisputed and disputed facts relating to this motion was hindered unnecessarily by the fact that the deposition excerpts provided by both parties comprise isolated pages devoid of any context.  In many instances, the parties have cited to questions and answers that clearly are the culmination of a longer line of questioning or are followed by additional relevant questions.  By omitting relevant context, these excerpts make it difficult for me to determine whether Plaintiff has characterized the deposition testimony accurately and whether it actually supports the propositions for which it is cited.  I understand counsels' intention to minimize the amount of paper that needs to be submitted to the Court, but citations to isolated snippets of deposition transcripts make it impossible to determine exactly what is being testified to and have increased, not decreased, the burden on the Court.  Because Defendants have not asserted that any of Plaintiff's excerpts were taken out of context, I will take these excerpts at face value, but the parties' failure to provide context is more than a trivial inconvenience.  The fact that the deposition excerpts provided, devoid of background or context, border on the incoherent leads to only one conclusion: that there are places where facts cited to or assumed by the parties simply were not placed on the record.

Carnahan acknowledges that he did work for Arban. Carnahan Dep. 44:17–20, 48:6–49:2. According to Carnahan, this began when Allen Massey of Arban approached Carnahan about work on the Prince William Adult Detention Center. *Id.* (Defs.' Excerpts) 53:10–54:18. Carnahan testified that the jobs "were offered directly to Mr. Carnahan by entities which knew he worked for the plaintiff." *See* Defs.' Opp'n 2. He did not, at any time, inform Massey that he was doing those jobs as an independent contractor and not as an employee of EDI, and in fact, Carnahan believed that Massey "knew and understood [Carnahan was] an employee of EDI." Carnahan Dep. (Defs.' Excerpts) 55:15–21. Carnahan did not speak with anyone at EDI before taking work from Arban in his individual capacity, *id.* at 56:14–18, and he did not know whether those jobs ever were offered to EDI, *id.* at 69:11–14.

It is undisputed that Carnahan used EDI employees to perform work for Arban, although Carnahan maintains that any such employees were doing Arban projects only during their time off from EDI, and were not paid by EDI for any of Carnahan's side work. *See* Defs.' Opp'n 2; *see also* NVE General Ledger for Jan. 1, 2011 to Dec. 3, 2011 (the "NVE Ledger") 1, Pl.'s Mem. Ex. 9, ECF No. 52-10.[6] Plaintiff has submitted a supplement that it argues shows that certain employees "listed in the [US Army Corps of Engineers ('USACE')] Payroll Reports as working for NVE . . . also reported hours on EDI precast concrete jobs on the same days." Pl.'s Supp. 3. However, Defendants maintain that those employees were working on evenings and weekends, and that they "were physically capable of working the proscribed [*sic*] ours [*sic*] for both employers, and being paid by both employers, on those days." Def.'s Supp. Resp. 2. And

---

[6] Because it is wholly without context or explanation, I find that Exhibit 8 to Plaintiff's Summary Judgment Memorandum, ECF No. 52-9, cannot be considered as proof of any fact relevant to this case, and I have disregarded it in my ruling.

Carnahan has so testified. *See* Carnahan Dep. (Defs.' Supp. Excerpt) 112:8–17, Defs.' Supp. Opp'n Ex., ECF No. 63-1.

Plaintiff alleges that certain EDI equipment and materials were used by Carnahan and NVE. Carnahan has testified that generally he rented his equipment, Carnahan Dep. (Defs.' Excerpts) 77:17–20, but that there were occasions when EDI equipment was used at NVE job sites. First, Carnahan testified that Mark Williams was an EDI employee authorized to use an EDI welder for side work, and that he occasionally brought an EDI welding machine to NVE projects. *See id.* at 80:4–83:2. Carnahan also testified that Chris McCarthy, another EDI employee, once brought an EDI welding machine to a job site at the National Zoo. *Id.* at 83:1–8. Although Carnahan had told McCarthy not to bring the welding machine to the National Zoo, the welding machine was used for NVE precast work at that site. *Id.* at 83:18–84:6. Carnahan also testified that "there were times that" he used his EDI cell phone for his side work. *Id.* at 122:12–124:11.

Plaintiff also argues that there is circumstantial evidence that Carnahan and NVE used "welding materials, welding rods, gas, welding gas, or welding air," Pl.'s Mem. 9, because there are no records of NVE having purchased those items. However, Plaintiff has produced no evidence that any such material was taken from EDI, and Carnahan has not so admitted.

Plaintiff commenced this action by filing an eleven-count complaint in this Court on January 12, 2012, naming Mr. Carnahan and NVE as defendants. Compl., ECF No. 1. Since then, Plaintiff has sought and received leave to amend its complaint on two separate occasions, in December 2012, *see* Mot. for Leave of Court to File Am. Compl., ECF No. 35; Paperless Order, ECF No. 36, and March 2013, *see* Pl.'s Mot. for Leave of Court to File Second Am. Compl., ECF No. 44; Paperless Order, ECF No. 48. Plaintiff's amended complaints have added

minor factual allegations, added Mr. Carnahan's wife, Christine S. Carnahan, as a defendant, and added three additional counts.

As currently pleaded, the Second Amended Complaint sets forth fourteen counts, evidently intended to cover every conceivable theory of liability at least once and, as explained below, apparently without much advance consideration of whether a number of the counts feasibly could be asserted under the facts that have been identified. They are : Count I: Breach of Duty of Loyalty; Count II: Tortious Interference with Economic Relationship; Count III: Fraud—Non-Disclosure or Concealment; Count IV: Fraud—Intentional Misrepresentation; Count V: Civil Conspiracy—Ray Carnahan, Jr.; Count VI: Tortious Interference with Contract; Count VII: Trespass and Conversion; Count VIII: Misappropriation of Trade Secrets; Count IX: Injunctive Relief—Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction; Count X: Accounting; Count XI: Declaratory Relief; Count XII: Civil Conspiracy—Christine S. Carnahan; Count XIII: Breach of Contract—Raymond K. Carnahan, Jr.; and Count XIV: Unjust Enrichment—Raymond K. Carnahan, Jr. and Christine S. Carnahan.

Also on January 12, 2012, Plaintiff filed a Motion for Ex Parte Temporary Restraining Order and/or Preliminary Injunction, ECF No. 4. A hearing on the TRO was held on January 13, and Defendants consented to the entry of a TRO. *See* Civil Minutes, ECF No. 9; Temporary Restraining Order, ECF No. 10. Pursuant to a joint motion of the parties, *see* Joint Mot. Requesting Inj. Order by Consent, ECF No. 11, Chief Judge Chasanow entered an injunction finding, *inter alia*, that Mr. Carnahan executed the Noncompete Agreement with Plaintiff and was subject thereto, Order Granting Inj. by Consent ("Inj.") 2, ECF No. 13. As of its effective date, the Injunction supersedes the Noncompete Agreement and, *inter alia*, bars Carnahan or NVE from engaging in precast work for a period of twenty-four months, which period will

restart in the event that the Injunction is violated, but which currently ends on February 2, 2014. *Id.* Under the terms of the Injunction, Carnahan currently is permitted to solicit bids for precast work that will commence after February 2, 2014. *Id.* at 3–4. The Injunction resolves Count IX of the Second Amended Complaint.

On April 25, 2013, Plaintiff filed the instant motion seeking partial summary judgment with respect to liability on Count I: Breach of Duty of Loyalty; Count III: Fraud—Non-Disclosure/Concealment; Count V: Civil Conspiracy; Count VII: Trespass and Conversion; Count XIII: Breach of Contract; and Count XIV: Unjust Enrichment. Pl.'s Mot. 1. Defendants Carnahan and NVE filed their Opposition on May 9, 2013. Defs.' Opp'n. Plaintiff declined to exercise its right of reply, and the time to do so now has expired. Loc. R. 105.2(a). On August 21, 2013, Plaintiff filed a supplement to its summary judgment motion, seeking to demonstrate that Carnahan improperly employed EDI employees while they were on the clock for EDI, *see* Pl.'s Supp., and Defendants responded on August 29, 2013, Def.'s Supp. Resp.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of

evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* "[U]nder Fed. R. Civ. P. 56, as amended in 2010, facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Mallik v. Sebelius*, ---- F. Supp. 2d ----, 2013 WL 4559516, at *12 (D. Md. Aug. 28, 2013) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC-11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013)).

A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin*, 107 F. Supp. 2d at 671. The substantive law governing the case determines what is material. *See Hoovan-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant, in light of the governing law, is not material. *Id.*; *see* Fed. R. Evid. 401 (defining relevance).

## III.  DISCUSSION

### A.  Count I: Breach of Duty of Loyalty

Plaintiff seeks summary judgment as to liability on its claim that, by engaging in precast work with EDI customers using EDI employees, Carnahan is liable for a breach of his duty of loyalty. "It is clear that the duty of loyalty is an implied duty, 'read into every contract of employment,' and requires that an 'employee act solely for the benefit of his employer in all matters within the scope of employment, avoiding all conflicts between his duty to the employer and his own self-interest.'" *Weichert Co. of Md., Inc. v. Faust*, 19 A.3d 393, 400 (Md. 2011) (quoting *Md. Metals, Inc. v. Metzner*, 382 A.2d 564, 568 (Md. 1978)). "This concern for the

integrity of the employment relationship has led courts to establish a rule that demands of a high level employee an undivided and unselfish loyalty to the corporation." *BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 406 (D. Md. 2001) (citing *Metzner*, 382 A.2d at 568). Accordingly, "an employee may not solicit for himself business which his position requires him to obtain for his employer. He must refrain from actively and directly competing with his employer for customers and employees, and must continue to exert his best efforts on behalf of his employer." *Metzner*, 382 A.2d at 569 (citing *C-E-I-R, Inc. v. Computer Corp.*, 183 A.2d 374, 379 (Md. 1962)).

There is no dispute of material fact with regard to this count. The parties agree that Carnahan worked as a senior project manager, directed and oversaw various operations and employees of EDI, and held "a position of trust and leadership." *See* Second Am. Compl. ¶ 16; Answer ¶ 16. It also is undisputed that Carnahan was approached by Allen Massey of Arban about a precast concrete job, Carnahan Dep. (Defs.' Excerpts) 53:10–54:18; that Arban was a customer of EDI, Carnahan Dep. 52:7–9; but that Carnahan did not inform EDI that he was doing work for Arban, Carnhan Dep. (Defs.' Excerpts) 56:14–18.[7] Massey knew that Carnahan

---

[7] Plaintiff claims that there are additional undisputed facts showing a breach of Carnahan's duty of loyalty. It indeed is undisputed that Defendants employed EDI employees, but Defendants deny that those employees were paid by EDI for their time working for Defendants. Defs.' Opp'n 3–4. It is not entirely clear that using EDI employees would violate any duty if doing so did not interfere with their work for EDI, and the parties have not briefed the issue in any meaningful detail. A similar problem exists with respect to Carnahan's admitted use of an EDI welding machine on one occasion (although Carnahan otherwise disputes using EDI equipment). *See id.* Particularly given that Plaintiff seems to seek damages in the form of the profits it would have earned had Carnahan not usurped any opportunities, rather than disgorgement of Defendants' profits, it is also not entirely clear that the use of EDI resources would affect the damages that Plaintiff seeks. *But cf. Billman v. State of Md. Deposit Ins. Fund Corp.*, 585 A.2d 238, 246 (Md. Ct. Spec. App. 1991) ("When an officer or director breaches his duty of loyalty to the corporation by usurping a corporate opportunity for his personal benefit, the corporation may claim all of the benefits of the transaction for itself." (citing *Guth v. Loft*, 5 A.2d 503, 510–11 (Del. 1939))).

was an employee of EDI and never was informed that Carnahan's work for Arban was not being done on behalf of EDI. Carnahan Dep. (Defs.' Excerpts) 55:15–21. And it is undisputed that EDI could—and frequently did—perform the type of work that was offered to Carnahan. *See* Carnahan Dep. 69:6–10.

Defendants' sole defense is that Carnahan's conduct was permissible because he did not seek this work out actively, and thus did not "solicit" work to the detriment of his employer. *See* Defs.' Opp'n 4.[8] This is a distinction without a difference. Under the doctrine of usurpation of corporate opportunity, an officer or director may not take for himself *any* opportunity if "'the corporation could realistically expect to seize it and develop the opportunity,'" *Shapiro v. Greenfield*, 764 A.2d 270, 278 (Md. Ct. Spec. App. 2000) (quoting *Indep. Distribs., Inc. v. Katz*, 637 A.2d 886 (Md. Ct. Spec. App. 1994)), irrespective of whether he sought out that opportunity. Even assuming that Carnahan was not a true fiduciary owing his employer "'a punctilio of an honor the most sensitive,'" *Clancy v. King*, 954 A.2d 1092, 1113 (Md. 2008) (quoting *Meinhard v. Salmon*, 164 N.E. 545, 546 (N.Y. 1928) (Cardozo, C.J.)), there is no reasonable view of "honesty and fair dealing," *see Metzner*, 382 A.2d at 568, that would allow Carnahan to take for himself work that was offered to him by an EDI customer, while employed by EDI, without informing EDI or the customer that he was taking that opportunity for himself. And such a usurpation clearly is inconsistent with any sense of "loyalty." *See Weichert*, 19 A.3d at 400. Accordingly, Plaintiff is entitled to summary judgment as to liability with respect to Count I.

---

[8] Defendants have declined to cite cases to support this argument in contravention of Local Rule 105.1 (requiring a memorandum to "set[] forth . . . authorities"). However, they appear to be relying on language from the cases cited *supra* stating that an employee may not solicit business to the detriment of his employer.

### B. Count XIII: Breach of Contract

Plaintiff seeks summary judgment as to liability on its claim that Carnahan breached the Noncompete Agreement by doing precast work in competition with Plaintiff. "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed a contractual obligation and that the defendant breached that obligation." *Carroll Co. v. Sherwin–Williams Co.*, 848 F. Supp. 2d 557, 563 (D. Md. 2012). Defendants argue that the contract never was formed between Carnahan and Plaintiff and, in any event, that it did not apply to Carnahan's actions while still employed by EDI. Defs.' Opp'n 4.

First, Defendants argue that Carnahan's obligations ran not to Plaintiff, but to some other entity. It is clear that Carnahan was one party to the agreement. *See* Noncompete Agreement. But Defendants claim that the counterparty, listed in the agreement as "EDI, LLC, a Maryland corporation (the 'Employer')" is an entity other than Plaintiff EDI Precast, LLC. *See* Defs.' Opp'n 4; *see also* Noncompete Agreement 1.

Defendants' argument is too clever by half. Although "[c]ourts in Maryland apply the law of objective contract interpretation," which focuses first on the language of the agreement, *see, e.g.*, *Dumbarton Improvement Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 233 (Md. 2013), this inquiry begins with "'what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *See Tomran, Inc. v. Passano*, 891 A.2d 336, 344 (Md. 2006) (quoting *Gen. Motors Acceptance Corp. v. Daniels*, 492 A.2d 1306, 1310 (1985)). If "to a reasonably prudent layman, the language used is susceptible of more than one meaning," the contract is ambiguous and extrinsic evidence may be relied upon to show the intention of the parties. *See Truck Ins. Exchange v. Marks Rentals, Inc.*, 418 A.2d 1187, 1190 (Md. 1980).

For over a decade, Carnahan was an employee of at least two entities owned and managed by Nicholson and with names that included "EDI": EDI, Inc., a Maryland corporation, and EDI Precast, LLC, a Maryland limited liability company. Carnahan Dep. 16:18–20, 18:4–11. The Noncompete Agreement was executed by Carnahan and Nicholson in 2007, around the same time that EDI, Inc. ceased to exist and EDI Precast, LLC came into being. Nicholson Dep. 19:16–20:11; Noncompete Agreement. In contrast to the undisputed evidence that EDI was Carnahan's employer, Carnahan has produced no evidence suggesting that he ever was or believed himself to be an employee of the EDI, LLC located in Annapolis, *cf.* Entity Detail for EDI, LLC, Defs.' Opp'n Ex. 1, ECF No. 58-1, even though the recitations in the Noncompete Agreement clearly identify its signatories as standing in an employer–employee relationship, *see* Noncompete Agreement 1. Nor has Carnahan suggested that he believed that Nicholson had the authority to sign for EDI, LLC, whose registered agent is another person entirely. *See* Entity Detail for EDI, LLC. I find that the term "EDI, LLC, a Maryland corporation (the 'Employer')," as used in the Noncompete Agreement, clearly and unambiguously refers to Carnahan's long-time employer, EDI Precast, LLC (albeit by a shortened form), and not to some other "EDI, LLC" with which Carnahan has no relation.[9]

---

[9] Indeed, to adopt Carnahan's position would undermine the very linguistic rules that make human communication possible at all. Virtually all documents, legal or otherwise, contain references to external facts, entities, or events. "When a speaker uses a word *w* to refer to some intended referent *a*, he must assume that his addressee will consider it rational to use *w* to refer to *a* in that context; he must assume that if he and his addressee don't in fact have the same assumptions about what beliefs are normal in the community at large, and in every relevant subgroup, at least the addressee will be able to tell what relevant beliefs the speaker imputes to be addressee . . . ." Georgia M. Green, *Pragmatics and Natural Language Understanding* 60–61 (2d ed. 1996). To read such references as ambiguous when there is any difference between a description and the thing described would be to turn the ambiguity intrinsic to all written or spoken language into a crowbar with which to tear apart the otherwise clear terms of every contract. This is precisely why even objective contract interpretation must look to what the parties, if reasonable, would have meant by their words. *See Tomran*, 891 A.2d at 344. Indeed,

Further, were I to credit Defendants' argument, it would mean only that I would have to find that "EDI, LLC, a Maryland corporation (the 'Employer')" is ambiguous and may refer alternatively to two different entities while accurately describing neither one (i.e., the unrelated entity EDI, LLC and the entity EDI Precast, LLC that was Carnahan's employer—both of which are Maryland limited liability companies, not Maryland corporations). That ambiguity could be resolved only in Plaintiff's favor. There is not even a suggestion of extrinsic evidence in the record to show that Carnahan even knew that EDI, LLC existed, much less that he believed that he was employed by and contracting with that entity. In short, Carnahan's argument is nothing but sophistry.

Second, Defendants argue that, even if Carnahan was bound by the Noncompete Agreement, it "deal[s] with obligations which exist after Defendant Carnahan has terminated his employment." Defs.' Opp'n 4. Here, Defendant's argument has some merit. The Noncompete Agreement sets various time periods for its provisions. Paragraph 1, which, *inter alia*, bars Carnahan from operating a competing business or hiring away EDI employees, covers "a period of five (5) year(s) from the date of the termination of his/her employment with the Employer." Noncompete Agreement ¶ 1. Paragraph 2, which prevents Carnahan from taking EDI's customers, takes effect "upon the termination of the Employee's employment." *Id.* ¶ 2. And, as if these provisions were insufficiently clear on their own, paragraph 3, which, in essence, bars Carnahan from disclosing EDI's confidential information or trade secrets, is effective "either during the term of [Carnahan's] employment or at any time after the termination of his/her

---

Because referential uses are independent of the actual identity of the intended referent, a referential use may involve a (mistaken) description that is false of its intended referent, or is in fact true of no one. Even in such a case, it may still serve to pick out that intended referent.

*Id.* at 40.

employment." *Id.* ¶ 3. Accordingly, it cannot credibly be disputed that the parties were clear about when obligations began to run and that they clearly stated which obligations were effective when Carnahan was still employed at EDI and which took effect upon his termination. Further, the prohibitions against Carnahan engaging in competing business, or in interfering with EDI's employee or client relationships, did not take effect until after his termination, and therefore were not violated here.[10]

The only provision of the contract that may have been breached here—that is, the only provision that related to Carnahan's actions while still employed by EDI—is the prohibition on the disclosure of trade secrets. *See* Noncompete Agreement ¶ 3. Although Plaintiff has alleged a violation of this obligation, *see* Compl. 17 ("Count VIII: Misappropriation of Trade Secrets"), there are no facts in the record relevant to that issue.

Although Carnahan's actions likely would have violated the Noncompete Agreement had he undertaken them after he was terminated, he was not terminated until after the events complained of in this suit (at which point, the agreement had already been superseded, Inj.). Accordingly, Plaintiff is not entitled to summary judgment in its favor with respect to Count XIII. To the contrary, it appears that Plaintiff, as a matter of law, cannot prevail on this count and that it may be proper to grant summary judgment for Defendant. Because Fed. R. Civ. P. 56(f) entitles Plaintiff to notice and an opportunity to respond before I grant summary judgment against it, I will give Plaintiff the opportunity to show cause why summary judgment should not be granted for Defendant on Count XIII.

---

[10] It is worth noting that there also was no need for Plaintiff to have obtained a contractual promise that Carnahan would not engage in those behaviors because they violated Carnahan's duty of honesty and fair dealing with respect to his employer in any event. *See supra.*

## C. Count III: Fraud by Concealment/Non-Disclosure

Plaintiff's inartful pleading makes it difficult to determine precisely what cause of action it has intended to allege in Count III, but Plaintiff seems to be asserting the somewhat-distinct elements of fraudulent non-disclosure and fraudulent concealment in alleging that Carnahan either had a duty to disclose his side work and did not do so, or actively concealed his side work from Plaintiff. *But see* Paul Mark Sandler & James K. Archibald, *Pleading Causes of Action in Maryland* § 3.95, at 354 (5th ed. 2013) (grouping concealment and non-disclosure under a single type of fraud). To show fraudulent non-disclosure, Plaintiff must show:

> (1) *the defendant owed a duty to the plaintiff to disclose a material fact;* (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

*Blondell v. Littlepage*, 991 A.2d 80, 94 (Md. 2010) (quoting *Lloyd v. GM*, 916 A.2d 257, 274 (Md. 2007)). Here, as an initial matter, there is no question that Carnahan did not disclose that he was doing precast work on the side. Carnahan Dep. (Defs.' Excerpts) 56:14–18. Although the parties have provided negligible briefing on the issue, it also is likely that Plaintiff adequately has pleaded that Carnahan had a duty to disclose. "A duty to disclose arises in certain relationships such as a confidential or fiduciary relationship. Such a confidential relationship exists where confidence is reposed, and in which dominion and influence resulting from such confidence may be exercised by one person over another." *Hogan v. Md. State Dental Ass'n*, 843 A.2d 902, 908 (Md. Ct. Spec. App. 2004) (citations and internal quotation marks omitted). In light of Carnahan's duty of good faith and honesty to EDI as his employer, *see supra*, and his admission that he held "a position of trust and leadership," Second Am. Compl. ¶ 16; *see* Answer

¶ 16 (admitting same), I would be hard-pressed to find that he had no duty to inform his employer of his competing side work.[11]

But Plaintiff has failed to allege any facts as to how it would have acted had it known that Carnahan had been doing precast side work, relying instead on unsupported statements in its memorandum of law. *See* Pl.'s Mem. 17. Also fatally, Plaintiff has not made any showing of intent on the part of Carnahan other than to state conclusorily that Carnahan's silence was "intentional." *See id.* Even though one easily could infer that Plaintiff would have acted upon the knowledge that Carnahan was doing precast work on the side (as it did, in fact, by filing this suit) and that Carnahan would have known as much, such inferences cannot be the basis for a grant of summary judgment. To the contrary, I must "view[] the facts and inferences drawn therefrom in the light most favorable to the non-moving party." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). By this standard, Plaintiff has not shown sufficient facts to satisfy the elements of fraud and warrant a grant of summary judgment as to liability in its favor on Count III.

### D. Count VII: Trespass/Conversion

In Count VII, again, Plaintiff's allegations are imprecise in that they allege that Defendants *either* converted or trespassed upon certain of Plaintiff's property. Although "the difference between [trespass and conversion] is fundamentally one of degree," *United States v. Arora*, 860 F. Supp. 1091, 1098 (D. Md. 1994), there is a substantial difference in the appropriate measure of damages:

---

[11] Plaintiff also has relied on *United States v. Colton* to argue that Carnahan engaged in "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or prevent further inquiry into a material matter" so as actively to conceal—rather than merely fail to disclose—material facts. *See* 231 F.3d 890, 899 (4th Cir. 2000); Pl.'s Mem. 15–16. There is no evidence of this type of active concealment in the record.

> In trespass the plaintiff may recover for the diminished value of his chattel because of any damage to it, or for the damage to his interest in its possession or use. . . . [I]n the action for conversion, title to the chattel passes to [the defendant], so that he is in effect required to buy it at a forced judicial sale.

*Staub v. Staub*, 376 A.2d 1129, 1132 (Md. Ct. Spec. App. 1977).

"A conversion claim under Maryland law 'requires not merely temporary interference with property rights, but the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor.'" *Thomas v. Artino*, 723 F. Supp. 2d 822, 834 (D. Md. 2010) (quoting *Yost v. Early*, 589 A.2d 1291, 1303 (Md. Ct. Spec. App. 1991)). The mere "intentional use of EDI's equipment," Pl.'s Mem. 19, falls far short of showing that Defendant converted that property to the complete exclusion of Plaintiff.

Trespass, on the other hand, requires only "an intentional use or intermeddling with the chattel in possession of another." *Arora*, 960 F. Supp. at 1097. "'Intermeddling' means intentionally bringing about a physical contact with the chattel." *Restatement (Second) of Torts* § 217. Plaintiff alleges three different factual bases for trespass liability.

First, Plaintiff alleges generally that "Mr. Carnahan/NVE used welding rods, welding equipment, bars, rigging, and other materials owned by EDI to perform jobs for NVE." Pl.'s Mem. 19. The only facts to support this allegation are that Carnahan "had full access to EDI's equipment and personnel," *id.* at 18; that he had the authority to charge purchases to EDI, *id.*; and that Carnahan and NVE's records did not show that these items were purchased, *id.* at 19; NVE Ledger. The fact that NVE did not purchase these materials is a far cry from showing that they necessarily were taken from EDI. Thus, Plaintiff is not entitled to summary judgment for trespass on this basis.

Second, Plaintiff alleges that Carnahan misused his company cell phone and EDI files. *See* Pl.'s Mem. 18–19. But it appears that the actual *possession* of his company cell phone was

with EDI's consent, and therefore cannot be a trespass. Carnahan Dep. 122:12–17.[12] Similarly, Plaintiff has not alleged that Carnahan took possession of any files without its consent but only that they were not necessary for Carnahan's work. *See* Pl.'s Mem. 18. Accordingly, neither of these actions shows that Plaintiff is entitled to summary judgment.

Finally, there is one undisputed instance in which Defendants arguably intermeddled with Plaintiff's possession of its property: the admitted use of an EDI welding machine for a NVE project at the National Zoo. *See* Defs.' Opp'n 6. But a trespass requires that the chattel in question be *in the possession of another*. *See Restatement (Second) Torts* § 217. The mere improper use of a chattel—here, EDI's welding machine—is not itself a trespass unless it accomplished an intermeddling with EDI's possession. "[A] person who is in 'possession of a chattel' is one who has physical control of the chattel with the intent to exercise such control on his own behalf, or on behalf of another." *Id.* § 216. It is not entirely clear from the facts before me that the welding machine was in EDI's possession when put to the use of Defendants. Rather, it is alleged only that the machine was in the possession of Chris McCarthy, an EDI employee who was doing work for NVE at the National Zoo. Carnahan Dep. (Defs.' Excerpts) 83:18–84:6. It is equally possible that McCarthy possessed it on behalf of EDI, as a bailee, or against the wishes of EDI management (in which case it may be McCarthy, and not Defendants, who committed a trespass). Nor have the parties provided any legal authority to show that the facts as currently alleged can support liability for trespass. *See* Loc. R. 105.1. Accordingly,

---

[12] This is not to say that, to the extent that Carnahan's unauthorized calls may have led to increased costs to EDI, there may not be a valid basis for seeking those damages through another cause of action such as unjust enrichment. However, the parties have not briefed that issue and, given that any such claim is unlikely to amount to more than a few dollars in charges, *see* Carnahan Dep. 124:4–11 (stating that Carnahan typically used his personal cell phone for side work, but occasionally used his EDI cell phone), it is hard to imagine any legitimate or logical reason to expend legal resources seeking or opposing such trifling damages even if they may be sought consistently with Rule 11.

Plaintiff has not shown that it is entitled to judgment on liability as a matter of law on Count VII, and summary judgment on that count must be denied.

### E.  Count XIV: Unjust Enrichment

To prevail on a claim of unjust enrichment, Plaintiff must show:

(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Bediako v. Am. Honda Fin. Corp.*, 850 F. Supp. 2d 574, 582 (D. Md. 2012).  Plaintiff claims that it is entitled to recover Carnahan's salary and benefits, in essence, because while he was being paid to work for Plaintiff, he also was competing with Plaintiff for precast work.  *See* Pl.'s Mem. 20.

This entirely misconstrues the nature of unjust enrichment.  "Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity *belong to another.*"  *Everhart v. Miles*, 422 A.2d 28, 32 (Md. Ct. Spec. App. 1980) (quoting *Am. Jur. 2d Restitution and Implied Contracts* § 3) (emphasis added).  Here, Plaintiff is seeking to recover payment for work that Carnahan, apparently, actually performed.  *See* Defs.' Opp'n 7.  There is no injustice in Carnahan receiving—and retaining—compensation for the work that he did for Plaintiff's benefit.  To the extent that the harm caused by Carnahan may have offset—or outweighed—his work on Plaintiff's behalf, the appropriate remedy is an action for damages for Carnahan's wrongful actions, not disgorgement of the salary that he earned legitimately. Accordingly, not only is Plaintiff not entitled to summary judgment as to liability on Count XIV, but pursuant to Fed. R. Civ. P. 56(f), I will grant summary judgment in favor of Defendant on this count unless Plaintiff can demonstrate why doing so would be improper.

### F. Count V: Civil Conspiracy

It is not entirely clear how Plaintiff intends to allege civil conspiracy. Although the Second Amended Complaint seems to allege that Carnahan conspired in NVE's improper conduct, Second Am. Compl. 15, Plaintiff's Summary Judgment Motion seeks to hold NVE liable as a conspirator in Carnahan's improper conduct, Pl.'s Mem. 21. In any event, Plaintiff has not shown that it should prevail on any claim for civil conspiracy.

"'Conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff.'" *Haley v. Corcoran*, 659 F. Supp. 2d 714, 726 (D. Md. 2009) (quoting *Alleco Inc. v. The Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1045 (Md. 1995)). Plaintiff has not shown that it is entitled to judgment against NVE on any underlying claim, and therefore Carnahan cannot be liable as a conspirator. Further, Plaintiff is not entitled to summary judgment as to liability on its claims against Carnahan for fraudulent concealment or "Trespass/Conversion," *see supra*, so that there can be no derivative liability for conspiracy as to these unproven acts.

The only claim on which Plaintiff has prevailed on this motion for partial summary judgment is its claim for breach of the duty of loyalty against Carnahan. *See supra*. The Maryland Court of Appeals has held that "a defendant may not be adjudged liable for civil conspiracy unless that defendant was legally capable of committing the underlying tort alleged." *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 428 (Md. 2009). Specifically, where defendants "owed no fiduciary duty to [the plaintiff], they may not be held liable for civil conspiracy." *Id.* at 429. Here, Carnahan's duty to Plaintiff entirely arose out of the employer–employee relationship between the parties. *See C-E-I-R, Inc. v. Computer Dynamics Corp.*, 183 A.2d 374, 379 (Md. 1962) ("the employment relationship is one of confidence and trust"). Because NVE

never was employed by EDI, NVE was not subject to any similar duty and cannot be held liable under a civil conspiracy theory. *See Shenker*, 983 A.2d at 428–29. Accordingly, Plaintiff is not entitled to summary judgment as to liability on its conspiracy claims and, pursuant to Fed. R. Civ. P. 56(f), shall show why summary judgment should not be entered for Defendant Carnahan on this count.

## IV. PLEADINGS IN THIS CASE

As previously noted, the operative complaint in this case sets forth fourteen purported causes of action. Some of these are obviously duplicative. *Compare* Second Am. Compl. 12 (Count III: Fraud—Non-Disclosure or Concealment), *with id.* at 13 (Count IV: Fraud—Intentional Misrepresentation). Others already have been resolved. *See, e.g.*, *id.* at 19 (Count IX: Injunctive Relief—Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction); *see also* Inj. And, although the parties have not discussed the relief to which Plaintiff would be entitled on any of its myriad claims, it is apparent to me that most of the claims set forth simply are different ways of recovering damages for the same harm: Carnahan's improper precast work for Arban while an employee of Plaintiff. *See, e.g.*, Second Am. Compl. 9 (Count I: Breach of Duty of Loyalty), 11 (Count II: Tortious Interference with Economic Relationship); (Count III: Fraud—Non-Disclosure or Concealment), 13 (Count IV: Fraud—Intentional Misrepresentation), 15 (Count V: Civil Conspiracy—Ray Carnahan, Jr.), 22 (Count XII: Civil Conspiracy—Christine S. Carnahan), 23 (Count XIII: Breach of Contract—Raymond K. Carnahan, Jr.).

Plaintiff's claims for declaratory and equitable relief also have been resolved or mooted. Because the Injunction has dissolved the Noncompete Agreement, *see* Inj., Plaintiff's claim for declaratory relief as to that agreement now is moot, *see* Second Am. Compl. 21 (Count XI:

Declaratory Relief).  Similarly, a grant of summary judgment against Carnahan as to liability on a single legal claim, *see supra*, appears to reduce Plaintiff's claim for an equitable accounting to mere surplussage, *see* Second Am. Compl. 20 (Count X: Accounting).  Accordingly, Plaintiff is ordered to show cause as to why Counts X and XI should not be dismissed.

Charitably viewed, the steady proliferation of claims in Plaintiff's complaints may be the result of a good faith—if overly cautious—"belt-and-suspenders" approach to pleading that is common in civil practice.  But it is not clear that Plaintiff ever has thought seriously about the nature of its claims, the necessary elements and proofs, or even the simple question of what forms of damages it expects to collect and how, even though such consideration is required by Fed. R. Civ. P. 11(b).  Neither party's summary judgment briefing provided a detailed (or, in many cases, even a sufficient) discussion of the elements and proofs required to make out a claim.  *See generally* Pl.'s Mem.; Defs.' Opp'n.  And nearly every legal theory alleged by Plaintiff purports to seek the same, boilerplate damages of $1 million.  *See generally* Second Am. Compl.

Though not uncommon, this unconsidered tendency to "plead them all and let the judge sort them out" is a tremendous and unjustified drain on the resources of this Court.  In the context of summary judgment, the parties' failure to discuss specific facts and law for each element of each claim has deprived the Court of the benefits of the adversary system and required it to devote time and attention to claims that, had Plaintiff done even a cursory amount of research, it would have known are meritless or require more factual support than has been provided.  To proceed to a trial on all of the remaining counts set forth in Plaintiff's Second Amended Complaint, including a panoply of redundant and unclear claims, would serve only to waste the Court's time further and  runs the risk of confusing the  jury, particularly in light of the

fact that Plaintiff has succeed in establishing liability in the only count really necessary to permit him to recover for the damages to which plaintiff believes it is entitled. Because Plaintiff now has prevailed on its most useful and strongest theory of liability, it no longer needs to augment its belt with quite so many pairs of suspenders. It appears to me, although I will not decide in the absence of briefing, that the damages for breach of the duty of loyalty (whatever they may be) necessarily are identical to those for tortious interference and breach of contract.[13] If so, then trying these alternative theories of liability would serve no valid purpose. Plaintiff should not be required to discard any viable claims that it believes are necessary to preserve its appellate rights. However, Plaintiff would be wise to think about whether it truly is necessary to proceed to trial on Counts II and VI, and to give serious thought generally as to which claims it can continue to maintain in good faith, consistent with Rule 11.

Additionally, although Plaintiff was denied summary judgment on its claims for fraud and trespass based on factual disputes, I have held that Plaintiff has not provided a meritorious legal basis for liability under its theories of breach of contract, unjust enrichment, and civil conspiracy. Pursuant to Fed. R. Civ. P. 56(f)(1), Plaintiff is ordered to show cause why summary judgment as to Counts V, XII, XIII, and XIV should not be granted in favor of Defendants. Should it chose to do so, however, Plaintiff would be wise to make sure that its arguments are legally and factually more robust that in its initial summary judgment filings.

Plaintiff will have twenty-one days to dismiss voluntarily any claims that it believes no longer are necessary to maintain and to show cause why Counts V, X, XI, XII, XIII, and XIV should proceed to trial. In so doing, Plaintiff, as always, will be held to the standards of Fed. R. Civ. P. 11(c)(3).

---

[13] Compensatory damages for fraud likely also are the same, but a claim for fraud may not be redundant if Plaintiff intends to seek punitive damages as well.

## V. CONCLUSION

For the aforementioned reasons, Plaintiff's Partial Motion for Summary Judgment as to liability is GRANTED as to Count I: Breach of Duty of Loyalty, and otherwise is DENIED.

Within twenty-one days of the date of the accompanying Order, Plaintiff shall:

1) SHOW CAUSE as to why Count X: Accounting and Count XI: Declaratory Relief should not be dismissed as moot;

2) SHOW CAUSE as to why summary judgment in favor of Defendant should not be granted with respect to Count V: Civil Conspiracy, Count XII: Civil Conspiracy, Count XIII: Breach of Contract, and Count XIV: Unjust Enrichment; and

3) Dismiss voluntarily any remaining duplicative, redundant, unfounded, or otherwise unnecessary or surplus claims or other matter or show cause why it should not be required to do so.

A telephone status conference will be held before me on Tuesday, December 17, 2013 at 11:00 a.m. to address a trial schedule and any other related issues; counsel for Plaintiff is to initiate the call.

A separate order shall issue.


Dated: <u>November 12, 2013</u>                              <u>      /S/                        </u>
                                                            Paul W. Grimm
                                                            United States District Judge

dsy